THE NEWTON COUNTY DRAINING COMPANY ET AL. *v.* NOF-
SINGER ET AL.

DRAINING COMPANY.—*Articles of Association.*—*Description of Lands and Proposed Improvement.*—Where articles of association of a draining company provide that the jurisdiction of the company shall include four townships in a county, and shall have reference to all the wet and overflowed lands in said townships, particularly the lands of certain designated persons, a schedule of whose lands is appended to the articles, and say that the object of the association shall be the draining and ditching of the lands aforesaid, and it is proposed therein to construct divers ditches, etc., without defining the routes of the same, the articles do not sufficiently specify the contemplated improvements or the lands to be affected thereby.

SAME.—Where there is no legal incorporation of a draining association, owners of lands assessed are not estopped from resisting the collection of the assessments, because a part of the contemplated ditching has been completed at great expense, thus benefiting the lands of such owners, with their knowledge and without objection.

INJUNCTION.—*Illegal Corporation.*—A party who is about to be damaged by the act of a company assuming to act as a corporation, but never legally organized as such, may bring his action for an injunction against such company in the corporate name.

From the Newton Circuit Court.

*E. L. Urmston, C. H. Test,* and *D. V. Burns,* for appellants.

DOWNEY, C. J.—This was an action by the appellees against the appellants, the object of which was to enjoin the collection of certain assessments of benefits to the lands of the appellees, the issuing of bonds, and securing the same by mortgage, and to enjoin the company and its contractors from further proceeding with the construction of its drain, etc. It is alleged that the company claims to be a corporation organized under the act which took effect May 22d, 1869, and which is found in 3 Ind. Stat. 222. A demurrer to the complaint was filed by the defendants and overruled by the court. An exception was duly taken by the defendants. As the sufficiency of the articles of association is questioned, it seems necessary to set out the parts thereof in question, which are as follows: "Articles of association

The Newton County Draining Co. *et al. v.* Nofsinger *et al.*

of the Newton County Draining Association. Articles of association made and entered into by the undersigned owners, and being interested in wet lands lying adjacent to the Kankakee river, in Newton county, Indiana, and in Lake, McClellan, Beaver, and Jackson townships, in said Newton county; and the undersigned hereby enter into the following voluntary association for the purpose of constructing drains, dikes, and levees, and also for the purpose of draining and protecting said lands, and to ditch, widen, deepen, make new channels into said Kankakee river, and regulate the tributaries and inlets within said county and townships, and to do and perform all acts necessary to be done and performed in and about the said premises, in as full and ample a manner as we are entitled and empowered to do under an act entitled ' an act to authorize and encourage the construction of levees, dikes and drains, and the reclamation of wet and overflowed lands by incorporated companies, and to repeal all former laws relating to the same subject.' Approved May 22d, 1869.

" 1. The corporate name of said association shall be known and designated as 'The Newton County Draining Company.'

" 2. The jurisdiction of this company shall include the townships of Lake, McClellan, Beaver, and Jackson, in Newton county, State of Indiana, and shall have reference to all wet and overflowed lands in said townships, particularly to the lands of Alexander J. Kent, as designated in schedule marked A, and hereto attached and made part hereof, and the lands of Thomas R. Barker, as designated in schedule marked B, and hereto attached and made part hereof, and also the lands of Constantine B. Cones, as designated in schedule marked C, hereto attached and made part hereof, and also the lands of Nathaniel West, as designated in schedule marked E, hereto attached and made part hereof, and also the lands of Charles French, as designated in schedule marked F, hereto attached and made part hereof, and the lands of Alpheus S. McCullough, as described in schedule marked G, hereto attached and made part hereof, and the

lands of William Burton, as described in schedule marked I, and lands of Algy Dean, as described in schedule marked J, and lands of Isom Burton, as described in schedule marked K, and lands of John H. Luers, described in schedule marked L.

" 3. The object of said association shall be the draining and ditching of the lands aforesaid, and the draining and ditching of the wet and overflowed lands of all who may hereafter join said association; and to that end they purpose cutting a ditch or channel from Beaver lake in said county to Beaver creek in said county, to open divers ditches and channels leading into Beaver lake, Beaver creek, and the Kankakee river, widen and deepen the state ditches that are in said townships of Lake, McClellan, Beaver, and Jackson, and open divers channels and ditches into said state ditches; also, to cut ditches and channels to drain the water from the Black Marsh into the Iroquois river by way of the Big Slough in Jackson township."

The articles of association are signed by eighteen persons, and schedules of the lands of Kent, Barker, Cones, West, French, McCullough, William Burton, Dean, Isom Burton, and Luers follow.

It is objected to the articles of association that they are void, because they do not contain any sufficient description of the lands, the intrinsic value of which was liable to be affected by the proposed work; and because they do not give or contain any plan or description whatever of the intended improvements, nor of the ditch or ditches, drain or drains by the company proposed to be constructed. According to the exposition of the draining law in former decisions of this court, the articles of association in this case do not sufficiently specify the contemplated improvement or the lands to be affected thereby. In the second clause, it is stated that the jurisdiction of the company shall include four townships in the county, and shall have reference to all wet and overflowed lands in those townships, particularly the lands of certain designated persons, a schedule of whose

lands is appended. Had the statement been limited to the specified lands, there would have been some degree of certainty as to the lands to be affected. But we are not informed whether the designated lands are wet and over-flowed lands or not, or, if part of them are of that charac-ter, what part. But what as to the other lands in the town-ships? How is it to be known what portion and what par-ticular tracts of them are to be treated as falling within the "jurisdiction" of the company? How is it to be known by any land-owner whether the articles of association and the aim of the company "shall have reference" to his lands or not?

Again, what particular works do the company propose to construct? What are the objects of the association as stated in the articles of association? "The draining and ditching of the lands aforesaid?" What lands are the lands aforesaid? Clearly not the lands mentioned in the schedules appended to the articles of association alone; for all the wet and overflowed lands in four townships have been mentioned, and we think must be included in "the lands aforesaid." To this end they propose to cut a ditch or channel from Beaver lake to Beaver creek. They propose to open divers ditches and channels leading into Beaver lake, Beaver creek, and the Kankakee river. They propose to widen and deepen the state ditches in the three designated townships. They propose to open divers channels and ditches into said state ditches. They propose also to cut ditches and channels to drain the water from the Black Marsh into the Iroquois river by way of the Big Slough in Jackson township. According to the case of *O'Reiley* v. *The Kankakee Valley Drain-ing Co.,* 32 Ind. 169, the articles of association in this case are void. It was there said: "Parties whose interests are to be affected are not to be kept in ignorance of the purpose of the company until the surveys are made and accepted by the company. They are entitled to have a voice in every corporate act, and to have notice by the articles themselves whether or not their interests are to be affected by the work contemplated." See, also, *The Skelton Creek Draining Co.* v.

*Mauck, ante,* p. 300; *West* v. *The Bullskin, etc., Co.,* 32 Ind. 138; and *Seyberger* v. *The Calumet Draining Co.,* 33 Ind. 330. In the last named case, although the general doctrine laid down in the former cases is recognized, there may be a question whether the case was correctly decided according to that doctrine. The objects of the company were certainly stated in a very general and indefinite manner in the articles of association in question in that case.

It is alleged in the complaint that after the assessment was made and recorded, the company abandoned its original articles of association, or its organization under them, by afterward, to wit, on the 10th day of May, 1871, filing for record and causing to be recorded, etc., other and distinct articles of association, under which said pretended company now claims its corporate existence and power to act; and the plaintiffs allege that said pretended company did not, after the filing for record of the last mentioned articles of association, in any manner attempt to have appraisers appointed, as by said act it should have done, nor did said pretended company have any valid schedule of assessments of benefits filed for record in, etc., but plaintiffs aver that on the contrary the said pretended company did, on the 3d day of June, 1871, refile for record, in, etc., the schedule of assessments of benefits before that time made by said pretended appraisers, as hereinbefore stated, and without having given any notice of any intended assessment, and without requiring said pretended appraisers to examine the lands, the intrinsic value of which was liable to be affected by the proposed ditches, nor did said pretended appraisers make any examination whatever of the said lands.

There are numerous other objections to the validity of the assessments stated in the complaint, but we do not deem it necessary to state or consider them.

The only other question presented by the assignment of errors relates to the sufficiency of the first paragraph of the answer, to which a demurrer was filed by the plaintiffs, and which was sustained by the court. There is nothing in this

paragraph of the answer, and, indeed, could not be anything which could obviate the objections to the articles of association which we have found to exist. As to the surrender of its articles of association or its organization, the answer states the making and recording of the original articles of association, and that afterward, to wit, in the month of May, 1871, for the purpose of more particularly and specifically designating the route and bearings of the work, and the main channel and the latterals thereof, the said company amended the original articles of association, which amended articles of association, were duly recorded in, etc. ; that said company has not abandoned either articles of association, but is acting under each and both, and claims all the rights and privileges which each and both of said articles of association confer on said company.

We need not decide whether such a company can thus correct or amend its articles of association, after the same have been recorded; nor need we determine whether the amendment, if otherwise proper, was such as to cure the defects in the originals. The complaint alleges, and the fact appears from the dates given, that the assessment, the validity of which is in question, was made before the alleged amendment to the articles of association was made. The original articles of association were recorded on the 23d day of April, 1870; the assessors were appointed at the September term of the circuit court, in the year 1870; notice of the intended assessment was given in that year, but at what particular time is not stated in the answer. The appraisers returned the schedule some time prior to January 2d, 1871, and on that day, it is alleged, the secretary of the company filed the same for record in the recorder's office. The amended articles were recorded, as we have seen, in the month of May, 1871. Under these circumstances, the attempted amendment of the articles of association can not affect the question as to the validity of the assessments in question.

It is alleged in the first paragraph of the answer, the one

which we are considering, that before the commencement of this suit, said defendant had completed a large portion of the ditching contemplated by said articles of association, to wit, about one-half of the same, at a large expense, to wit, about twenty thousand dollars, thereby draining said plaintiffs' lands and others in the vicinity thereof, and fitting them for greater agricultural advantages and increasing their market value to an amount far exceeding the amount of said assessments, without any notice of said plaintiffs' dissatisfaction therewith or objection thereto, though they knew the said work and ditching were being constructed; wherefore the said defendants say that said plaintiffs should be estopped from complaining thereof, etc. If we are right in the conclusion at which we have arrived, that there was no legal incorporation of said company, we think it must follow that there is no ground for an estoppel shown. It is not like the case where a party has contracted with a company as a corporation, and is therefore estopped to dispute its existence as such. It is not a mere irregularity in the assessment which it is sought to estop the plaintiffs to deny, and which might, in some cases, be a proper application of the doctrine; but it is the very existence of the corporation, a fact which lies at the foundation of the proceeding, and without the existence of which, everything based thereon must be invalid. In our judgment the court committed no error in its ruling upon the demurrer to the first paragraph of the answer.

It was suggested in consultation, though the question is not made by counsel for the appellants, that as the action in this case is against the corporation, with others, the fact that it was legally organized as such can not be disputed. This has not been so ruled in any similar case in this court. On the contrary, the cases of *O'Reiley* v. *The Kankakee Valley Draining Co., Seyberger* v. *The Calumet Draining Co.,* and *The Skelton Creek Draining Co.* v. *Mauck, supra,* and perhaps others, are cases where the action was thus brought and sustained in this form. Those cases, like this, were brought simply to restrain the company from doing certain

The Newton County Draining Co. *et al. v.* Nofsinger *et al.*

acts, apparently recognizing the existence of the corporations *de facto*, but insisting that they were not such *de jure*. The object was not to have a judgment declaring that the corporation never had any existence or to declare its charter forfeited, but only to protect the plaintiffs from injury resulting from the acts of the pretended corporation. When the proceeding is by information in the name of the State, and it is insisted that the pretended corporation never had any existence, we have held that the information should be against the persons claiming to be such corporation, and not against the corporation by its name. *The Mud Creek Draining Co.* v. *The State, ante,* p. 236. There is an apparent inconsistency in suing a corporation and at the same time alleging that it is not a legal corporation. But should the party who is about to be damaged by the act of such corporation bring his action against those claiming to act under the authority of the corporation, and succeed in restraining them, possibly others claiming to act as the officers or agents of the company may proceed to do the same act. If the pretended corporation shall be restrained and enjoined from doing the act on account of its defective organization, no one acting in its behalf could then do the act. It may be conceded that the question is one not free from doubt and difficulty, but we prefer to follow the cases which have already been decided, in which this form of proceeding has been sustained.

The judgment is affirmed, with costs.

PETTIT. J.—I do not concur in the foregoing opinion. A corporation is sued and brought into court by its corporate name to answer a charge that it never had an existence. This is an absurdity and is self-destroying. Would it do to sue a person by name and then aver in the complaint that no such person ever lived? I think the demurrer to the complaint should have been sustained.