## WOOD *v.* HARRISON ET AL.

CORPORATION.—*Stockholder of Manufacturing Corporation not Liable for Debts.—Statute Construed.*—A stockholder of a private corporation, organized in 1870, is not liable for the debts of such corporation thereafter accrued, under the act of May 20th, 1852, 1 G. & H. 427, sec. 11.

SAME.—At the time of the passage of the act of 1859, 1 G. & H. 276, secs. 1 and 2, security for dues from private corporations for manufacturing purposes had been provided by the act of 1852, and hence such corporations were excluded from the act of 1859.

SAME.—The repeal in 1863 of the eleventh section of the act of 1852 did not have the effect to make the act of 1859 extend to and embrace a class of corporations excluded by the language of the act.

SAME.—*Constitution.*—The fourteenth section of article 11 of the constitution in no way affects the proper construction of the acts to secure dues from private corporations.

**From the Marion Superior Court.**

*A. G. Porter, B. Harrison, C. C. Hines, W. H. H. Miller, G. H. Chapman, U. J. Hammond, J. J. Hawes,* and *J. B. Niles,* for appellant.

*A. Iglehart, J. T. Dye,* and *A. C. Harris,* for appellees.

DOWNEY, J.—This was an action by the appellees, creditors, against the appellant, as a stockholder, of a private corporation known as the Indianapolis Chair Factory.

The complaint, which is in one paragraph, sets forth the organization of that corporation in 1870, under the act for the organization of manufacturing and mining companies, approved May 20th, 1852; that it was organized for the purpose of manufacturing chairs, and was not a banking or road corporation; that defendant, by subscription, became the owner of four hundred shares of its stock, of fifty dollars each, being in all twenty thousand dollars, and was made a director of said corporation; that while defendant owned said twenty thousand dollars of stock, and was a director of the company, the plaintiffs loaned the corporation money, which, to the amount of several thousand dollars, remains unpaid; that in December, 1870, the company was adjudged a bankrupt; that plaintiffs have proved their debt in bankruptcy; which was allowed at six thousand dollars, and have received, as their *pro rata* share of the assets of the corporation, two thousand dollars, and the remainder is wholly unpaid.

To this complaint a demurrer was filed and overruled, and the defendant excepted.

An answer was then filed in four paragraphs; first, general denial; the second, no question is made upon; the third, as afterward amended, is a plea in abatement, setting up the pendency of bankrupt proceedings, alleging that the indebtedness of the defendant to the corporation or its creditors, if any, vested as assets in the assignee, and that he, therefore, and not the plaintiff, is the proper party to bring suit; and the fourth, as to the note of fifteen hundred dollars, being a part of the debt sued for, sets up that at the time the debt represented by that note was contracted, there were other stockolders of

said company, naming them, who, at the time of the answer, were still living, and ought to be made defendants.

To the amended third and the fourth paragraphs, demurrers were sustained, and the defendant excepted.

A reply of general denial being filed to the second paragraph of the answer, a trial was had, resulting in a finding for plaintiffs; a motion for a new trial overruled, exception by defendant, bill of exceptions duly filed, judgment for plaintiffs, appeal to general term, judgment affirmed, and appeal to this court.

The error assigned here brings in question the correctness of the decision of the superior court at general term. We are favored not only with elaborate arguments in the briefs of counsel in the cause, but also with able and exhaustive briefs from counsel not engaged in the cause, but whose clients are parties to other cases, in which the main question for decision here is involved.

We shall examine the question as to the sufficiency of the complaint. The sixth and fourteenth sections of article 11 of the constitution of the State are supposed to have a bearing upon the question to be decided. They are as follows:

" Sec. 6. The stockholders in every bank or banking company shall be individually responsible, to an amount over and above their stock, equal to their respective shares of stock, for all debts or liabilities of said bank or banking company.

"Sec. 14. Dues from corporations other than banking shall be secured by such individual liability of the corporators, or other means, as may be prescribed by law."

The first General Assembly that met after the adoption of the present constitution enacted a law for the incorporation of manufacturing companies, which was approved May 20th, 1852, and which contained the following section:

"Sec. 11. The stockholders of such company shall be individually liable, jointly and severally, for all debts due and owing laborers, servants and apprentices, for services rendered; and, to other creditors of the company, they shall be liable to an

amount equal to the stock held by them respectively." 1 G. & H. 427. ,

In 1859, the General Assembly passed the, following act :

"Section 1. The dues from all private corporations which have been or may be organized under the general laws and under the present constitution of this State, other than banking and road corporations, and other than those where security has already been provided, shall be secured in the manner hereinafter provided.

"Sec. 2. The stockholders and members of such corporations shall be individually liable for its debts to an amount equal to the interest or stock which they may respectively have therein, and the privileges or immunities which have been heretofore granted to such corporations, shall, upon the same terms, equally belong to all citizens who may desire to incorporate themselves for the same purposes, subject to the individual liability aforesaid.". Acts 1859, p. 58, 1 G. & H. 276.

On the 4th day of March, 1863, the legislature passed an act by which, among other things, the eleventh section of the act of May 20th, 1852, was repealed. Acts 1863, p. 48.

The Indianapolis Chair Factory, having become a corporation in 1870, and the indebtedness, for which it is sought to make the appellant liable, having accrued at a still later date, it is evident that the act of May 20th, 1852, cannot make the defendant liable.

The question is this, is the defendant liable under and by virtue of the act of 1859, above quoted ? That act does not extend to all private corporations. There are three classes of private corporations to which it does not extend. They are : 1. Banking corporations. 2. Road corporations; and, 3. Those where security had already been provided.

The eleventh section of the act of 1852 was still in force when the act of 1859 was enacted, and in order to ascertain what corporations are embraced in the third class mentioned in the act of 1859, we must look to that date, and cannot look to some subsequent date. The language is, "other than those where security has already been provided," etc. "Has been

provided," refers to a time which had already passed, when the act of 1859 was enacted.   Security had been provided by the act of 1852, so far as corporations for manufacturing were concerned, and hence corporations of that class were excluded from the operation of the act of 1859 as effectually as if they had been excluded by naming them.

Counsel for appellee argue the case as if the third class did not embrace all manufacturing corporations, but only such of them as were organized prior to the passage of the act of 1859. This, in our judgment, is a mistake.   We think the whole class was excluded from the operation of the act of 1859 by plain and unmistakable language.

Counsel on both sides argue the question whether there still remained in the act of 1852, by provisions in other than the eleventh section, security for the dues of manufacturing corporations after the repeal of that section.   But we regard this consideration as wholly immaterial.  It seems to us too plain to admit of doubt that the repeal in 1863 of the eleventh section of the act of 1852 could not have the effect to make the act of 1859 extend to and embrace a class of corporations expressly excluded by the language of the act.   It is not material in this case whether, after the repeal of section 11, there was any law securing the dues of any of the classes of corporations excluded from the operation of the act of 1859 or not.

An illustration of our views may be found in the ruling of this court in *Hoagland* v. *The State,* 17 Ind. 488.   The criminal code provides, that " all persons who are competent to testify in civil actions " are competent witnesses in criminal prosecutions.   2 G. & H. 410, sec. 90.   At the time the criminal code, in which this section is found, was enacted, parties in civil actions were not competent to testify in their own behalf. Afterward, however, the civil code was so amended that parties were made competent to testify for themselves, and, in the case cited, it was claimed that the defendant, the action being criminal, should be allowed to testify in his own behalf, because, by the criminal code, all persons competent to testify in civil actions are competent to give evidence in criminal

cases. The court, however, decided that the provision in the criminal code had reference to such persons only as were competent witnesses in civil actions when the criminal code was enacted.

This case was followed in *Taulman* v. *The State*, 37 Ind. 353. We borrow another illustration from a brief in behalf of the appellant:

" The constitution imposes on the legislature the duty to provide for punishing offences against the criminal law of the State. In 1852 the first General Assembly provided that the punishment for larceny should be imprisonment in the penitentiary. Suppose that in 1859 an act had been passed, like the one under consideration, that all violations of the criminal laws of the State, ' other than those for which the punishment has been already provided,' shall be as hereinafter prescribed. Four years afterward the law affixing the punishment for larceny was repealed. Would any judge or court venture to impose a sentence and inflict punishment under the act of 1859 ?"

It is claimed by counsel for appellee that the fourteenth section of article 11 of the constitution has a controlling influence in determining the proper construction of the act of 1859, and in one of the briefs this position is assumed:

"We submit that where an act of the legislature, authorizing the organization of corporations of a given class, contains a section which imposes individual liability as a security for dues, and this is the only provision for security contained in the act, an act of the legislature repealing such a section, unless some other provision for security be substituted by the legislature in the same or some other act, is either unconstitutional and void, or the repealing act being operative, the act itself becomes unconstitutional and void."

In our judgment, the section of the constitution, to which reference is made, in no way affects the proper construction of the law in question. It devolves a duty upon the legislature, but whether that department shall discharge that duty in one manner or another, at one time or another, or whether they

discharge it at all or not, is a matter for them, and does not enter, to any extent, into the question which we are considering. Nor do we think the section prevents the legislature from repealing an act creating individual liability, whether a new act is provided or not. We adopt the view of one of the learned counsel, who has filed a brief on behalf of the appellant, with reference to this section of the constitution :

"The provision, as it was inserted, had no effect more than if this whole subject had been expressly left to the legislature, or than if the clause had been, in more general terms, that the legislature should provide such guaranties for the rights and liabilities of stockholders as it might deem proper, or than if no clause had been inserted on the subject. The legislature was left wholly untrammelled, its attention being merely called to the subject, and everything being left wholly to its discretion and enlightened judgment."

We might concede the propriety or even importance of some suitable enactment on the subject, but this consideration must not weigh with us in the decision of what is admitted to be purely a question of law. The court should have sustained the demurrer to the complaint.

Other questions of interest and importance are in the case, but we prefer not to decide them until a case is presented in which their decision becomes necessary.

The judgment is reversed, with costs, and the cause remanded, with instructions to the general term to reverse the judgment at special term, and instruct the special term to sustain the demurrer to the complaint.